CULPEPPER IP, LLLC
Kerry S. Culpepper, Bar No. 9837
75-170 Hualalai Road, Suite B204
Kailua-Kona, Hawai'i 96740
Telephone: (808) 464-4047
Facsimile: (202) 204-5181
E-Mail: kculpepper@culpepperip.com

Attorney for Plaintiff
Bodyguard Productions, Inc.

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| Bodyguard Productions, Inc., | **Case No.: 1:19-cv-456** |
| | (Copyright) |
| Plaintiff, | |
| vs. | **COMPLAINT; EXHIBITS 1-2;** |
| | **DECLARATION OF DANIEL** |
| Pacific DirectConnect, Inc. | **ARHEIDT** |
| | |
| | **(1) CONTRIBUTORY** |
| Defendants. | **COPYRIGHT** |
| | **INFRINGEMENT** |
| | **(2) DIRECT COPYRIGHT** |
| | **INFRINGEMENT** |

## COMPLAINT

Plaintiff Bodyguard Productions, Inc. ("Plaintiff") files this Complaint against Defendant Pacific DirectConnect, Inc. ("Defendant") and allege as follows:

**I.   NATURE OF THE ACTION**

1. Plaintiff brings this action to stop piracy of its motion picture carried

20-013G

out by Defendant's subscriber Aston Waikiki Sunset.

2. Plaintiff bring this action under: (a) the United States Copyright Act of 1976, as amended, 17 U.S.C. §§ 101, et seq. (the "Copyright Act") and alleges that Defendant is liable for direct and contributory copyright infringement in violation of 17 U.S.C. §§ 106 and 501.

## II.   JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action pursuant to 17 U.S.C. §§ 101, et. seq., (the Copyright Act), 28 U.S.C. § 1331 (federal question), and 28 U.S.C. § 1338 (patents, copyrights, trademarks, and unfair competition).

4. Defendant solicits, transacts, or is doing business within this jurisdiction, and has committed unlawful and tortious acts both within and outside this jurisdiction with the full knowledge that such acts would cause injury in this jurisdiction.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) - (c) because: (a) all or a substantial part of the events or omissions giving rise to the claims occurred in this District; and (c)(3) Defendant may be sued in this District.

## III.   PARTIES

### A.   The Plaintiff

6. Plaintiff is a Nevada corporation with principal offices in Los Angeles, California.

7.  Plaintiff is an affiliate of Millennium Funding, Inc. ("Millennium"). Millennium is a production company and distributor of a notable catalog of major motion pictures.  (www.millenniumfilms.com).

8.  Plaintiff is the owner of the copyright for the motion picture *The Hitman's Bodyguard* ("Work"), a major motion picture released in 2017.

9.  The Work is an action movie directed by Patrick Hughes, and stars Ryan Reynolds as the world's top bodyguard, and Samuel L. Jackson as a hitman and his new client.  The Work tells the story of how the hitman and the bodyguard must put aside their difference and work together so that the hitman can testify at the International Court of Justice.

### B.  The Defendant

10.  Defendant is a Corporation organized under the laws of Hawaii.

11.  Upon information and belief, Defendant has a principal place of business in Honolulu, Hawaii.

12.  Upon information and belief, Defendant is an Internet service provider ("ISP") operating in Hawaii.

13.  Upon information and belief, Defendant purchases bandwidth from another ISP Hawaiian Telecom and resells and distributes the bandwidth to its own subscribers.

14.  One of Defendant's subscribers is the Aston Waikiki Sunset ("Aston").

15. Aston was assigned Internet Protocol ("IP") address 72.235.58.222 ("IP address") on at least March 11, 2018 and June 8, 2019.

16. Upon information and belief, Aston was also assigned the IP address on December 31, 2018.

17. As of August 23, 2019, Defendant does not have an agent designated to receive notifications of claimed infringement as required by 17 U.S.C. § 512(c)(2).



## V.   FACTUAL BACKGROUND

### A.  *The Plaintiff Owns the Copyright to the Work*

18. Plaintiff is the owner of the copyright in the Work. The Work is the subject of a copyright registration, and this action is brought pursuant to 17 U.S.C. § 411. Exhibit "1".

19. Plaintiff produced and marketed the Work at great expense.

20-015B

20. Due to Plaintiff's production and marketing efforts, there is consumer demand for viewing the Work.

21. The Work is a motion picture currently offered for sale in commerce.

22. Defendant had notice of Plaintiff's rights through at least the credits indicated in the content of the motion picture which bore a proper copyright notice.

23. Defendant also had notice of Plaintiff's rights through general publication and advertising associated with the motion picture, and packaging and copies, each of which bore a proper copyright notice.

24. Defendant also had notice of Plaintiff's rights from a notification Plaintiff's counsel sent to Defendant on August 27, 2018.

25. Upon information and belief, Defendant also had notice of Plaintiff's rights from one or more notifications sent by Hawaiian Telcom to Defendant sometime between January 1, 2018 and August 24, 2018.

### B. The Defendant directly infringed Plaintiff's Work multiple times

26. Defendant transmitted, routed, or provided connections for said transmitting and routing, through a network controlled by Defendant of at least a constituent portion of a copy of the Work to the IP address of subscriber and thereby Aston a plurality of times on March 11, 2018 via BitTorrent protocol, thereby directly infringing the Work. *See* Exhibit "2".

### 1. The BitTorrent Protocol

27. BitTorrent is one of the most common peer-to-peer file sharing protocols (in other words, set of computer rules) used for distributing large amounts of data.

28. The BitTorrent protocol's popularity stems from its ability to distribute a large file without creating a heavy load on the source computer and network. In short, to reduce the load on the source computer, rather than downloading a file from a single source computer (one computer directly connected to another), the BitTorrent protocol allows users to join a "swarm" of host computers to download and upload from each other simultaneously (one computer connected to numerous computers).

29. A BitTorrent "Client" is a software program that implements the BitTorrent Protocol. There are numerous such software programs which can be directly downloaded from the Internet.

30. A BitTorrent user that wants to upload a new file, known as an "initial seeder," starts by creating a "torrent" descriptor file using the Client he or she installed onto his or her computer.

31. The Client takes the target computer file, the "initial seed," here the copyrighted Work, and divides it into identically sized groups of bits known as "pieces."

32. The Client then gives each one of the computer file's pieces, in this

20-015B

case, pieces of the copyrighted Work, a random and unique alphanumeric identifier known as a "hash" and records these hash identifiers in a torrent file.

33. When another peer later receives a particular piece, the hash identifier for that piece is compared to the hash identifier recorded in the torrent file for that piece to test that the piece is error-free. In this way, the hash identifier works like an electronic fingerprint to identify the source and origin of the piece and that the piece is authentic and uncorrupted.

*2. The Plaintiff's Computer Investigator Identified the IP address of Defendant's subscriber Aston as a Participant in a Swarm Distributing the Plaintiff's Copyrighted Work*

34. The Plaintiff retained Maverickeye UG ("MEU") to identify the IP addresses that are being used by those people that are using the BitTorrent protocol and the Internet to reproduce, distribute, display or perform the Plaintiff's copyrighted Work.

35. MEU used forensic software to enable the scanning of peer-to-peer networks for the presence of infringing transactions.

36. MEU extracted the resulting data emanating from the investigation, reviewed the evidence logs, and isolated the transactions and the IP addresses associated therewith for the files identified by the SHA-1 hash value of the Unique Hash Numbers.

7

20-015B

37. The IP addresses, Unique Hash Number, and hit dates contained on Exhibit "2" accurately reflect what is contained in the evidence logs, and show that one or more individuals from the IP address of subscriber Aston have copied a piece of the Plaintiff's copyrighted Work identified by the Unique Hash Number.

38. Said one or more individuals' computers used the IP address of subscriber Aston to connect to the investigative server from a computer in this District in order to transmit a full copy, or a portion thereof, of a digital media file identified by the Unique Hash Number.

39. MEU's agent analyzed each BitTorrent "piece" distributed by the IP address listed on Exhibit 2 and verified that re-assemblage of the pieces using a BitTorrent Client results in a fully playable digital motion picture of the Work.

40. MEU's agent viewed the Works side-by-side with the digital media file that correlates to the Unique Hash Number and determined that they were identical, strikingly similar or substantially similar.

### *4. The Plaintiff notified Defendant that Aston was associated with substantial infringing activity*

41. Plaintiff's counsel notified Defendant of said direct infringement of the Work on August 27, 2018.

42. Plaintiff's agent sent to Hawaiian Telcom notifications of said direct infringements between January 1, 2018 and June 10, 2018.

43. Upon information and belief, Hawaiian Telcom forwarded said notifications to Defendant.

44. Defendant transmitted, routed, or provided connections for said transmitting and routing, through a network controlled by Defendant at least a constituent portion of a copy of the Work to the IP address of subscriber a plurality of times on June 8, 2019, thereby directly infringing the Work.

45. Neither Defendant nor its subscriber have a license from Plaintiff to make copies of Plaintiff's Work.

46. Upon information and belief, Defendant's agreement with subscriber Aston holds subscriber Aston responsible for all individuals who use subscriber Aston's Internet service.

47. Upon information and belief, Defendant's agreement with Hawaiian Telcom holds Defendant responsible for all individuals who use Defendant's Internet service.

48. Despite multiple notifications of infringements from Plaintiff, Hawaiian Telcom and third parties, Defendant has failed and steadfastly refused to terminate the account of subscriber Aston.

## C. Defendant contributed to the infringement of the Work

49. Despite notification on at least August 27, 2018 that subscriber Aston was using Defendant's service to infringe Plaintiff's Works and other Copyright

9

protected Works, Defendant has continued to provide Internet service to subscriber Aston.

50. Said infringements would have been stopped if Defendant merely terminated subscriber Aston's service.

51. With knowledge that subscriber Aston was using the service to infringe the Work, Defendant transmitted, routed, or provided connections for said transmitting and routing, through a network controlled by Defendant at least a constituent portion of a copy of the Work to the IP address of subscriber Aston a plurality of times on June 8, 2019, thereby contributing to the infringement of the Work by unknown individuals at Aston.

52. With knowledge that subscriber Aston was using the service to infringe the Work, Defendant transmitted, routed, or provided connections for said transmitting and routing, through a network controlled by Defendant at least a constituent portion of copies of the Works of third parties affiliated with Plaintiff such as the motion picture *Hellboy* of HB Productions, Inc. to the IP address of subscriber Aston a plurality of times between July 28 and July 31, 2019, thereby contributing to the infringement of the Works of third parties affiliated with Plaintiff by unknown individuals at Aston.

### D. Defendant has no safe harbor

53. Upon information and belief, Defendant did not have an agent

designated to receive notifications of claimed infringement as required by 17 U.S.C. § 512(c)(2) at the time of the infringements of the Work or as of the date of this Complaint.

54. Defendant had actual notice of the infringements of the Work.

55. Particularly, Plaintiff's agent sent notices to Hawaiian Telcom regarding the claimed infringements. Upon information and belief, Hawaiian Telcom forwarded these notices to Defendant per Hawaiian Telcom's policy.

56. Plaintiff's counsel communicated with Defendant's agent on August 27, 2018 regarding the claimed infringements.

57. Defendant had constructive notice of the infringements of the Work.

58. Defendant has purposely failed to terminate the account of the subscriber Aston despite having knowledge that the subscriber Aston is a repeat infringer.

## VI. CLAIM FOR RELIEF
**(Application for Injunctive Relief based upon Direct and Contributory Infringement)**

59. Plaintiff re-alleges and incorporates by reference the allegations contained in each of the foregoing paragraphs.

60. Plaintiff is the copyright owner of the Work which contains an original work of authorship.

61. Defendant had actual knowledge of third parties' infringement of

Plaintiff's exclusive rights under the Copyright Act at subscriber Aston.

62. Despite having said actual knowledge, Defendant has continued to provide Internet service to subscriber Aston.

63. Defendant's actions of providing transmission, routing, or connections for said copies of the Work to subscriber Aston are a direct and proximate cause of the infringements of Plaintiff's Work.

64. Defendant's inaction of purposely failing to terminate the account of subscriber Aston is a direct and proximate cause of the infringements of Plaintiff's Work.

65. Defendant had actual or constructive knowledge of infringement of Plaintiff's exclusive rights under the Copyright Act by its subscriber. Defendants knowingly and materially contribute to such infringing activity.

66. Defendant's knowing and material contribution to the infringement of Plaintiff's Copyrighted Work is willful, intentional, and purposeful, and in disregard of and with indifference to the rights of Plaintiffs.

67. As a direct and proximate result of the infringement to which Defendants knowingly and materially contribute, Plaintiff is entitled to injunctive or other equitable relief as provided by 17 U.S.C. § 512(j)(1)(B)(i).

68. Defendant's infringements were committed "willfully" within the meaning of 17 U.S.C. § 504(c)(2).

20-015B

WHEREFORE, the Plaintiff respectfully requests that this Court:

(A) enter temporary, preliminary and permanent injunctions enjoining Defendant from continuing to provide access to the subscriber Aston or the account holder of subscriber Aston and further order Defendant to terminate the account of subscriber Aston or the account holder; and

(B) grant the Plaintiff any and all other and further relief that this Court deems just and proper.

Plaintiff hereby demands a trial by jury on all issues properly triable by jury.

DATED: Kailua-Kona, Hawaii, August 23, 2019.

CULPEPPER IP, LLLC

/s/ Kerry S. Culpepper
Kerry S. Culpepper

Attorney for Plaintiff
Bodyguard Productions, Inc.

20-015B